[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DEC 18, 2008
THOMAS K. KAHN
CLERK

No. 08-13868
Non-Argument Calendar

_____

D. C. Docket No. 07-01216-CV-IPJ

J.H.O.C.,
d.b.a. Premier Transportation,
SENTRY SELECT INSURANCE,

Plaintiffs-Appellants,

versus

VOLVO TRUCKS NORTH AMERICA, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(December 18, 2008)

Before BLACK, BARKETT, and KRAVITCH, Circuit Judges.

PER CURIAM:

The owner and the insurer of a tractor, J.H.O.C. d/b/a Premier Transportation ("Premier") and Sentry Select Insurance respectively, sued the tractor manufacturer, Volvo Trucks North America, Inc. ("Volvo"), following an engine fire on August 19, 2006. The fire resulted from a defect in the exhaust gas recirculation system (EGR) that was the subject of a Volvo recall. The district court granted summary judgment to Volvo. For the reasons stated below, we affirm.

## I. BACKGROUND

On August 22, 2006, a tractor manufactured by Volvo which was owned and operated by Premier and insured by Sentry caught fire and was destroyed. The parties agree that this tractor was subject to a recall issued by Volvo in February 2006. The parties also agree that the cause of the fire was the defective condition of the exhaust gas recirculation ("EGR") pipes that was the subject of the recall.

Premier first learned of the EGR pipe defect on January 21, 2006 when Richard Brady, Premier's Director of Maintenance, received an email from Volvo discussing the problem and advising him that a recall notice would be issued shortly. The email acknowledged that Volvo had 42,000 trucks involved in the safety recall and that "[o]bviously it will take several months to facilitate action" on so many trucks. The email also stated that "[c]ustomers with trucks affected by

2

the recall can continue to normally operate their vehicles until the repair is made, but if they hear an exhaust leak or noise under the hood, they should stop the vehicle immediately and inspect the pipes." The email also advised truck owners to examine the pipes during every pre-trip inspection.[1]

On March 6, 2006,[2] Volvo issued a recall notice formally alerting Premier that a defect existed in the EGR pipes on Volvo tractors and identifying the individual tractors subject to the recall. The notice cautioned truck owners that an EGR-pipe failure could result in a fire and the defect should be corrected. The notice stated that should the EGR pipes fail there would be advance warning in the form of an audible increase in engine noise, discernible from normal engine noise, at which point the driver should immediately stop operating the vehicle. Truck owners were advised to look for early signs of an EGR-pipe failure such as cracks, separation of pipes, or sooting[3] when conducting their regular pre-trip inspections.

---

[1] Pre-trip inspections are inspections required by Department of Transportation regulation that must be performed before every trip on a commercial tractor such as the truck involved in this lawsuit. See 49 C.F.R. § 392.7 (providing that no commercial vehicle may be driven unless the driver is satisfied that the following parts are in good working order: service brakes and trailer brake connections; hand brake; steering mechanism; lighting devices and reflectors; tires; horn; windshield wipers; rear-vision mirrors; and coupling devices).

[2] Although the recall notice is dated February 28, Premier asserts that it did not receive the notice until March 6. As we construe all facts in favor of Premier, the non-moving party, in reviewing this summary judgment ruling, we will use March 6 as the date of the recall notice.

[3] Volvo stated that black smoke residue from a cracked portion of the EGR system would be visible in an inspection under the hood of the tractor prior to a failure of the EGR pipes.

3

Volvo asked truck owners to make an appointment to have the repairs performed at the nearest Volvo service center. The notice stated that the repairs would take approximately thirty minutes and would be performed at no cost to the truck owner.

According to Richard Brady's deposition testimony, he understood the potential for fire if the EGR pipes were not replaced and knew that a safety recall was something that must get done "ASAP." Brady testified that Premier began attempting to get its trucks repaired in accordance with the recall notice, but ran into some difficulty. Because of an existing dispute with the Atlanta Volvo service center, Premier refused to use that location to fix the trucks and decided instead to get the trucks fixed on the road. Under this plan, the truck drivers would stop along their routes at Volvo service centers they passed and try to get the repair done. According to Brady, "40 or 50 times" the service centers did not have the necessary part and could not immediately do the EGR repair. Brady testified that the Volvo centers stated that they could have the part within a day, but the Premier trucks could not wait for the repair because the trucks were in route to make deliveries and were paid according to the timeliness of their arrival. Brady stated that Premier kept no records of efforts to obtain the EGR repair for the specific truck at issue in this lawsuit, nor did he have any information as to

how often or even whether this particular tractor had sought repair. He, however, stated his belief that there were "probably" efforts every week to get repairs done on the tractor involved in this fire. At the time of the tractor fire in August 2006, 68 to 70% of Premier's trucks subject to the recall had been repaired. After the fire, Volvo sent parts to Premier to allow it to do the repairs itself and Premier finished repairing the remainder of its fleet within five weeks.

Plaintiffs filed suit seeking to recover losses incurred as a result of the fire. Plaintiffs alleged (1) liability under the Alabama Extended Manufacturers Liability Doctrine ("AEMLD"), (2) breach of an implied warranty of merchantability, (3) breach of an implied warranty of fitness for a particular purpose, (4) negligent and/or wanton failure to warn, (5) negligent and/or wanton design defect, (6) negligent and/or wanton construction, installation, and manufacture, and (7) negligence and/or wantonness. Plaintiffs added a claim for loss of use damages in their First Amended Complaint.

Volvo filed a motion for summary judgment asserting that Premier was contributorily negligent by failing to repair the EGR-pipe defect within the seven months following the recall and had assumed the risk of a fire due to the defective EGR pipes by continuing to operate the tractor without obtaining the repairs.

Based on the above evidence, the district court entered summary judgment in favor of Volvo, finding that Premier had committed contributory negligence in failing to get the necessary repairs done and had assumed the risk of a tractor fire by continuing to operate the vehicle without complying with the safety recall. The court noted that Premier had not provided any evidence that anyone had ever checked this particular tractor for the warning signs prior to the fire.

Plaintiffs filed a Motion to Alter or Amend the Judgment under Fed. R. Civ. P. 59 or, in the alternative, for Relief from the Order under Fed. R. Civ. P. 60(b). With their motion, Plaintiffs submitted an affidavit from the driver of the truck that caught fire. This affidavit stated that the driver performed a pre-trip inspection on the morning of August 22, 2006 and "did not observe any mechanical or any other type of problems with the Volvo tractor."[4] The driver also asserted that he never heard an increase in engine noise prior to the fire; he heard only a "loud boom" after which he immediately pulled over. The tractor was engulfed in flames "within seconds." Plaintiffs offered no explanation or excuse as to why they failed to submit this evidence earlier. The district court refused to consider this new evidence because Plaintiffs had been given ample

---

[4] We note that the affidavit did not state that the driver checked for the specific warning signs mentioned in the recall notice.

time to submit evidence earlier. The district court explained that its "opinions and orders are not meant to serve as guidelines for what evidence to submit post-dating their entry." The court denied the motion, and Plaintiffs timely appealed.[5]

## II. STANDARD OF REVIEW

We review <u>de novo</u> a district court's grant of summary judgment, applying the same legal standards as the district court. <u>Hi-Tech Pharm., Inc. v. Crawford</u>, 544 F.3d 1187, 1189 (11th Cir. 2008). Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. <u>Wooden v. Bd. of Regents of the Univ. Sys. of Ga.</u>, 247 F.3d 1262, 1271 (11th Cir. 2001) (quoting Fed. R. Civ. P. 56(c)).

## III. DISCUSSION

Under Alabama law,[6] a defendant seeking summary judgment based on contributory negligence as a matter of law "must show that the plaintiff put

_____

[5] The district court ruled that contributory negligence and assumption of risk defeated all claims except for Plaintiffs' wantonness claim, which the district court separately found Plaintiffs had failed to establish. Plaintiffs' appeal focuses on the allegations of contributory negligence and assumption of risk; they have thus abandoned their wantonness claim on appeal. See <u>United States v. Cunningham</u>, 161 F.3d 1343, 1344 (11th Cir. 1998) (holding that an issue is abandoned when an appellant fails to offer argument on that issue). They have also abandoned their breach of warranty claims by not raising them on appeal.

[6] Undisputedly, Alabama law applies in this action brought under diversity jurisdiction. See <u>McMahan v. Toto</u>, 256 F.3d 1120, 1131-32 (11th Cir. 2001) (noting that federal courts apply the substantive law of the forum state in a case with diversity jurisdiction).

7

himself in danger's way and that the plaintiff had a conscious appreciation of the danger at the moment the incident occurred." Hannah v. Gregg, Bland & Berry, Inc., 840 So. 2d 839, 860 (Ala. 2002). Where a defective product is involved, "[a] plaintiff is contributorily negligent in handling a defective product when he or she fails to use reasonable care with respect to that product." Gen. Motors Corp. v. Saint, 646 So. 2d 564, 568 (Ala. 1994). Normally, the occurrence of contributory negligence is a question for the jury. Hannah, 840 So. 2d at 860. "However, where the facts are such that all reasonable persons must reach the same conclusion, contributory negligence may be found as a matter of law." Id.

Assumption of the risk is established as a matter of law where the evidence shows "that the plaintiff discovered the alleged defect, was aware of the danger, proceeded unreasonably to use the product, and was injured." Sears v. Waste Processing Equipment, Inc., 695 So. 2d 51, 53 (Ala. Civ. App. 1997).

Here, the district court found that Premier was contributorily negligent and assumed the risk by allowing nearly six months to pass without obtaining the repairs described in the safety recall as necessary to avoid potential fire. Premier behaved negligently because the recall notified Premier that a fire could occur if the EGR pipes were not repaired, and five and a half months is an unreasonable amount of time to avoid a needed safety repair, especially where the consequences

8

association with the defect are so grave. Mr. Brady testified that he understood that a potential for fire existed and his statement that one should comply with safety recalls "ASAP" demonstrates that Premier understood that the danger involved.

Premier argues it demonstrated its reasonableness through Brady's testimony that showed it was attempting to obtain the repairs on all of its trucks but was unable to do so because Volvo was experiencing a shortage of parts at its service centers. Premier further asserts that it did not behave unreasonably because Volvo admitted in its email that it would take "several months" to complete the repairs on all Volvo tractors and indicated that it would be safe to continue driving these trucks unless the EGR pipes showed cracks or soot residue or an increase in engine noise was heard.

Premier, however, failed to adduce evidence that it attempted to repair the particular tractor that caught fire; all its evidence referred to its general efforts to fix the trucks in its possession subject to the recall. In their brief, Plaintiffs assert that "[i]t is clear that Premier did everything it could under the circumstances to get its fleet of Volvo tractors repaired." Nothing in the record, however, indicates that *any* efforts were made to bring this specific tractor in to replace the defective EGR parts. Without evidence that Premier attempted to fix this particular truck,

9

there is nothing to refute Volvo's assertions that Premier's own negligence and assumption of the risk were the proximate cause of the tractor fire.

Premier argues that the court should infer from its evidence that it made general efforts to repair all the trucks in its fleet and that it probably tried to fix this particular tractor. Yet, this evidence would not help Premier. Even if we inferred that Premier occasionally attempted to repair this truck but did not do so because the service center would have had to obtain a back-ordered part, Premier was still contributorily negligent. The undisputed evidence indicates that the repairs would take between a half hour and an hour to perform and that when Volvo service centers did not have the parts it would take approximately a day for the part to arrive. Furthermore, in their brief to this court, Plaintiffs state that the parts shortage "was not remedied until over one month into the recall process." They offered no explanation for the delay in obtaining the repair between that time and the end of August when the fire occurred. It is unreasonable as a matter of law to wait almost six months to obtain a safety repair that would prevent a fire in order to avoid an hour or, at the very most a one-day, delay.

Additionally, Premier failed to point to evidence showing that it took the precautions Volvo advised truck owners to perform in the safety recall further showing that it was contributorily negligent and assumed the risk that a damaging

fire would occur.[7] The safety recall stated that drivers "must" follow the inspection instructions to look for failing EGR pipes during pre-trip inspections. The record at summary judgment was devoid of any evidence that Premier inspected the pipes for cracks or soot residue. The record also did not show that the EGR-pipe defect in this truck occurred without warning signs. Thus, the record shows that there was no genuine issue of material fact and that Premier was contributorily negligent and assumed the risk as a matter of law.

By failing to obtain needed repairs that it knew would prevent the very fire that occurred and failing to take precautions necessary to allow continued truck operation until repairs could be performed, Premier was contributorily negligent and assumed the risk that this tractor fire would occur. This case is similar to Sears v. Waste Processing Equip., Inc., wherein the plaintiff's employees continued to use a product that they knew to be defective without taking precautions and one employee was consequently injured. 695 So. 2d at 52. In

---

[7] The affidavit of the truck driver was not submitted until the Plaintiffs' post-judgment motion. This was the first evidence that anyone had performed a pre-trip inspection the day of the fire and that an increase in engine noise did not precede the fire. We find no abuse of discretion in the district court's decision not to consider this evidence. Plaintiffs had ample opportunity to produce this affidavit in opposition to Volvo's motion for summary judgment and put forth no explanation as to why they did not do so. Furthermore, in their briefs to this court, Plaintiffs have not presented any arguments that it was improper for the court to refuse to consider this affidavit. By not raising this issue on appeal, Plaintiffs have abandoned it. See United States v. Cunningham, 161 F.3d 1343, 1344 (11th Cir. 1998).

11

<u>Sears</u>, the employees knew that the door to a large industrial trash compactor was malfunctioning, and yet continued to use the compactor. <u>Id.</u> An employee was injured when the defective door closed on her arm. <u>Id.</u> The court found that the plaintiff was contributorily negligent and had assumed the risk as a matter of law by failing to take reasonable precautions in using a known defective product. Here, Premier knew the tractor was defective and needed to be repaired and yet, from the evidence presented, it is not apparent that it took reasonable — or any — precautions. Premier, therefore, was contributorily negligent and assumed the risk of a tractor fire.

A plaintiff cannot recover in a negligence or an AEMLD action where the plaintiff's own negligence is shown to have proximately contributed to his damage. <u>Tell v. Terex Corp.</u>, 962 So. 2d 174, 177 (Ala. 2007). Thus, Premier's contributory negligence bars recovery on Plaintiffs' claims for negligence and violations of the AEMLD.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the ruling of the district court.