**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4559
_____

IBEW LOCAL UNION NO. 102; IBEW LOCAL 102 WELFARE, PENSION,
ANNUITY AND JOINT APPRENTICESHIP  TRANING FUNDS AND THEIR
BOARD OF TRUSTEES; IBEW LOCAL 102 DISTR FUND, as collection agent for the
National  Electrical Benefit Fund

v.

STAR-LO ELECTRIC, INC.; STARKO ELECTRIC SERVICES, INC.;
STAR-LO COMMUNICATIONS, INC.; ROBERT O'MALLEY ELECTRICAL
CONTRACTORS, INC.; LESSNER ELECTRIC  COMPANY; LOUIS R. VITO &
COMPANY, INC.; ELECTRO-JET ELECTRIC; P.J. SMITH ELECTRICAL
CONTRACTORS, INC.


STAR-LO ELECTRIC, INC.; STARKO ELECTRIC SERVICES, INC.; STAR-LO
COMMUNICATIONS, INC. ROBERT O'MALLEY ELECTRICAL CONTRACTORS,
INC.; LESSNER ELECTRIC COMPANY; LOUIS R. VITO & COMPANY, INC.;
P.J. SMITH ELECTRICAL CONTRACTORS, INC.,
                                                        Appellants
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civil No. 08-cv-00900)
District Judge:  Honorable Stanley R. Chesler
_____

Submitted Under Third Circuit LAR 34.1(a)
September 13, 2011
_____

Before: RENDELL, JORDAN and BARRY, <u>Circuit Judges</u>

_____

OPINION
_____

BARRY, <u>Circuit Judge</u>

Defendants-Appellants Star-Lo Electric, Inc., et al., were granted leave to file this interlocutory appeal of the District Court's order in favor of Local Union No. 102 of the International Brotherhood of Electrical Workers and five of its employee benefit funds on cross-motions for summary judgment. They also appeal the Court's subsequent grant of the prevailing parties' motion for reconsideration, which led the Court to modify its original opinion. Appellees' underlying suit alleges violations of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq., and claims that Appellants tendered insufficient benefit fund contributions owed pursuant to a collective bargaining agreement that calculates said obligations as a percentage of "gross labor payroll." The parties contest the meaning of this phrase, which the Court concluded is unambiguous. We will vacate and remand for further proceedings.

## I. Background[1]

Since 1946, the International Brotherhood of Electrical Workers (IBEW) and the National Electrical Contractors Association (NECA) have been parties to an employee benefits agreement. In January 2000, they promulgated a Restated Employees Benefit

_____

[1] Writing primarily for the parties, who are well-acquainted with the background of this case, we discuss only those facts essential to our analysis.

Agreement and Trust for the National Electrical Benefit Fund (NEBF) (hereinafter, "Trust Agreement"), which "embodie[s] … the Parties' collective bargaining agreement … [and] the basic agreement and declaration of trust for the National Electrical Benefit Fund." JA at 237. Per Part I, Provision 3, local unions' and employers' collective bargaining agreements must "require … contributions to the NEBF," while said entities are required "to recognize and bind themselves to th[e Trust] Agreement." *Id.*

Appellees are longtime parties to successive collective bargaining agreements (CBAs) with the Highland Division of the Northern New Jersey Chapter of the NECA, of which Appellants are members. Pursuant to those CBAs and associated trust agreements, Appellants are obligated to make contributions to various employee benefit funds based on a percentage of monthly "gross labor payroll" (GLP). The parties' 2003-2007 CBA sets forth employers' obligations to various benefit funds, but does not specifically define GLP.[2] Article III, § 3.1(b), however, provides that payments shall be made according to a specific schedule, listing "3% Gross Labor Payroll" for the NEBF, followed by eight other funds and their contribution rates. JA at 104-05. Six of these also use GLP, a seventh specifies "Gross Labor Payroll (with no wage gap)," and an eighth provides for a rate of "$0.01 per hour of productive electrical labor payroll." *Id.* Examining these and other CBA provisions – especially Article IX, which binds parties to the Trust Agreement

---

[2] The CBA referenced in this opinion covered the period June 1, 2003 through May 31, 2007. Other CBAs are part of the record, and while we note that there are some differences among them, *compare* JA at 69 *with* JA at 104-05, we agree with the District Court that these differences are immaterial to the dispute in this case.

– the District Court concluded that "the NEBF [has] a special status." *Id.* at 4.

From that conclusion, the District Court proceeded to hold that the Trust Agreement's definition of GLP controls for purposes of the CBA. Trust Agreement § 6.2.1 specifies that "[t]he term '3% of the gross labor payroll' shall mean … 3% of all wages and other compensation paid to, or accrued by, the … Employees." JA at 245. In rejecting Appellants' argument that GLP means only wages for actual hours worked, the Court reasoned that reading all CBA references to GLP to mean "all wages and other compensation," per the Trust Agreement, coheres with the CBA's *qualification* of the term elsewhere. That is, providing different formulas for some funds confirms that "gross labor payroll," on its own, means "all wages and other compensation." The Court also, however, acknowledged that certain of these qualifications – e.g., the CBA's use of the phrase "gross labor payroll (productive electrical payroll)" – "is puzzling and has an ambiguous meaning." JA at 7.

Shortly after the District Court granted, on May 6, 2010, Appellees' motion for summary judgment, the Court also granted their motion for reconsideration, premised on "concern about possible implications of some of the Court's language explaining the reasoning underlying its decision" – to wit, that "'[t]he Court's current Opinion saddles the Local 102 Funds with the NEBF's exception of extraordinary bonuses from all wages and other compensation.'" JA at 12-13 (quoting Plaintiffs' District Court Br. at 16). The Court observed "that 'the distinction between the claims of the Local 102 Funds and the

4

NEBF was not an issue raised by anyone'" and, "to respond to Plaintiffs' concern[,] …

modif[ied] one sentence" in its original opinion. *Id.* (quoting Plaintiffs' District Court Br.

at 7). The sentence stating "that the parties intended to incorporate … provisions [6.2.1

and 6.2.3 of the Trust Agreement] into the CBA" (i.e., to define GLP) thus was revised to

read, "the parties intended to incorporate the language of provision 6.2.1 into the CBA."

JA at 5, 13. On July 15, 2010, the Court granted Appellants' motion for leave to file an

interlocutory appeal, which we thereafter permitted to proceed.

## II. Discussion

In this suit premised on alleged ERISA violations pursuant to 29 U.S.C. §§ 185,

1132, & 1145, the District Court exercised jurisdiction pursuant to 28 U.S.C. § 1331. We

exercise jurisdiction pursuant to 28 U.S.C. § 1292.

## A. Definition of "Gross Labor Payroll"

We apply plenary review to the District Court's disposition of cross-motions for

summary judgment, examining both its grant and its denial of the parties' respective

motions. *Int'l Union, United Mine Workers of Am. v. Racho Trucking Co.*, 897 F.2d

1248, 1252 & n.2 (3d Cir. 1990). Summary judgment is appropriate "if the movant shows

that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56. Facts are "material" when they

> could affect the outcome of the proceeding, and a dispute about a material
> fact is genuine if the evidence is sufficient to permit a reasonable jury to
> return a verdict for the nonmoving party. In conducting our inquiry, we
> consider the evidence in the light most favorable to the nonmovant and
> draw all reasonable inferences in that party's favor.

5

*Roth v. Norfalco LLC*, --- F.3d ----, 2011 WL 2547576 at *5 (3d Cir. 2011) (internal quotation marks and citations omitted).

Appellants argue that the District Court erred when it concluded that GLP "unambiguously consist[s] of all compensation from whatever source," but "without examining undisputed extrinsic evidence" of various kinds – here including affidavits of officials associated with the parties, which, according to Appellants, suggests that the parties did not construe GLP to meal "all wages and other compensation." Appellants' Br. at 2. We decline to decide whether Appellants' construction of GLP can or should prevail, but given the standard that applies to summary judgment, agree that the Court's decision must be vacated. *See, e.g.*, *Einhorn v. Fleming Foods of Pennsylvania, Inc.*, 258 F.3d 192, 197 (3d Cir. 2001) (remanding because disputed terms' ambiguity created "a genuine issue of material fact that preclude[d] entry of summary judgment for either side.").

"[F]ederal law governs the construction of collective bargaining agreements, [and] traditional rules of contract interpretation apply when not inconsistent with federal labor law." *Teamsters Indus. Emp. Welfare Fund, et al., v. Rolls-Royce Motor Cars, Inc.*, 989 F.2d 132, 135 (3d Cir. 1993). Whether contract terms are ambiguous is a pure question of law, subject to plenary review. *Id.* Thus, "[t]o affirm a grant of summary judgment on an issue of contract interpretation, we must conclude that the contractual language is subject to only one reasonable interpretation." *Sanford Inv. Co. v. Ahlstrom Mach. Holdings,*

*Inc.*, 198 F.3d 415, 420-21 (3d Cir. 1999) (quotation omitted). If we "determine[] that a given term in a contract is ambiguous, then the interpretation of that term is a question of fact for the trier of fact to resolve in light of the extrinsic evidence offered by the parties in support of their respective interpretations." *Id.* at 421. *Rolls-Royce* provides that, in deciding whether a CBA is ambiguous,

> we hear the proffer of the parties and determine if there are objective indicia that, from the linguistic reference point of the parties, the terms of the contract are susceptible of different meanings. *Before* making a finding concerning the existence or absence of ambiguity, we consider the contract language, the meanings suggested by counsel, *and* the extrinsic evidence offered in support of each interpretation. Extrinsic evidence may include the structure of the contract, the bargaining history, *and the conduct of the parties that reflects their understanding of the contract's meaning.*

989 F.2d at 135 (emphasis added; internal brackets, quotation marks, and citations omitted).

As a threshold matter, the District Court did not apply *Rolls-Royce*'s directive that it consider extrinsic evidence in determining *whether* the disputed contract term – here, GLP, as used in the CBA – is ambiguous. Rather, it simply concluded that Appellants' proffered evidence of the parties' course of dealing "is barred." JA at 9. In doing so, it relied on the caution in one of our cases that "[t]here are … limits on the use of extrinsic evidence in interpreting collective bargaining agreements." *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of America v. Skinner Engine Co.*, 188 F.3d 130, 146 (3d Cir. 1999). While that observation is salutary, it does not trump *Rolls-Royce*'s rule, which *Skinner* expressly cites. *See id.* at 145. Moreover, *Skinner* rejects using

7

extrinsic evidence "*to create* an ambiguity where none exists." *Id.* (emphasis added). Because, here, the CBA does not itself define GLP, Appellants' argument that the Court should have considered its proffered extrinsic evidence does not run afoul of *Skinner*, and comports with *Rolls-Royce*.[3]  Likewise, Appellees' contention that GLP's meaning is facially self-evident is unpersuasive,[4] while their subsequent claim that the Trust Agreement "is of no relevance to the meaning of other terms in the … CBA," Appellees' Br. at 19, curiously attacks the very basis for the Court's decision in their favor.[5]

That the Trust Agreement has a special status for the parties is clear, but what the Appellees' own argument on appeal also makes clear is that the extent to which that Agreement's definition of GLP carries over to the CBA is disputed.  Moreover, to look to the Trust Agreement to supply a definition for GLP, as the District Court did, is to rely on extrinsic evidence, further undercutting the claim that that phrase, as used in the CBA, is unambiguous.  Indeed, with respect to at least one fund, the Court noted that more than

---

[3] Even if there were tension between *Rolls-Royce* (1993) and *Skinner* (1999), it would be resolved in favor of *Rolls-Royce*.  *Holland v. N.J. Dep't of Corrs*., 246 F.3d 267, 278 n.8 (3d Cir. 2001) ("[T]o the extent that [a case within this Circuit] is read to be inconsistent with earlier case law, the earlier case law . . . controls.") (citation omitted).

[4] Appellees' argument is striking: "The only reason the NEBF Trust Agreement had any bearing on the 'meaning' of gross labor payroll is because the … Agreement uses a meaning *that would not be evident to anyone reading the plain, simple and unambiguous words* 'gross labor payroll.'"  Appellees' Br. at 20-21 (emphasis added).

[5] Appellees' reliance on a 1990 NEBF executive's memorandum clarifying the meaning of GLP, *see* Appellees' Br. at 17-18, contradicts their assertions (1) that the term is unambiguous, and (2) that its meaning can be determined without reference to materials extrinsic to the CBA itself.  *See also id.* at 19-20 (asserting as error the District Court's conclusion that the CBA utilizes the Trust Agreement's definition for GLP for purposes of setting the contribution amounts to various benefit funds).

three-quarters of employers made contributions according to one qualified rendering of GLP, which "means that 22% … did something else.  It is extremely unclear what all this means . . . ."  JA at 9.  To be sure, Appellants' emphasis on the CBA's qualifications of GLP does not convince us that *their* proposed definition is unambiguously correct.  But the sum total of the vagaries that they highlight, especially given *Rolls-Royce*'s requirement and the fact that all reasonable inferences are drawn in Appellants' favor, precludes awarding summary judgment in favor of Appellees.  Contracts are construed as a whole, and the CBA uses too many terms, sometimes overlapping and other times not, for us to conclude that the critical term "gross labor payroll" is unambiguous such as to permit summary judgment.[6]  *See RCI Northeast Svcs. Div. v. Boston Edison Co.*, 822 F.2d 199, 202 (1st Cir. 1987) ("[W]here the plain meaning of a contract phrase does not spring unambiguously from the page or from the context, its proper direction becomes one for the factfinder, who must ferret out the intent of the parties.").

**B.  The Motion for Reconsideration**

---

[6] Appellees' argument that res judicata and collateral estoppel apply, citing *Nat'l Elec. Benefit Fund v. StarKo Elec. Svcs., Inc.* (*StarKo*), No. 06-1446, 2008 WL 2683617 (D.N.J. Jul. 1, 2008), is a red herring.  To be sure, *StarKo* addressed the meaning of GLP and its definition in the Trust Agreement, but involved a different alignment of parties – which Appellees concede – and the specific issue there, as opposed to here, was "whether vacation and holiday pay constitute a part of … 'gross labor payroll.'" *Id.* at *3.  Accordingly, their res judicata and collateral estoppel argument fails.  *See United States v. 5 Unlabeled Boxes*, 572 F.3d 169, 173 (3d Cir. 2009) ("Res judicata requires," *inter alia*, "a final judgment on the merits in a prior suit involving *the same claim* . . . .  Collateral estoppel … requires," *inter alia*, "that … the identical issue was previously adjudicated … [and] the part[ies] being precluded from relitigating the issue w[ere] fully represented in the prior action."" (emphasis added; internal quotations marks and citations omitted)).

9

Appellants also contest the District Court's ruling on Appellees' Rule 59(e) motion for reconsideration, the purpose of which "is to correct a clear error of law or to prevent a manifest injustice in the District Court's original ruling." *United States v. Dupree*, 617 F.3d 724, 732 (2010). While we generally review a court's ruling on a Rule 59(e) motion for abuse of discretion, our review is de novo to the extent that that ruling "is predicated on an issue of law." *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 673 (3d Cir. 1999) (citation omitted).[7]

The District Court did not explain how its decision met the requirements of *Dupree*, and it granted Appellees' motion without addressing the effect of its revised opinion on this case's central, disputed issue. This leads us to more searching review, *see Max's Seafood*, 176 F.3d at 673, and underscores the need for remand, *see, e.g.*, *Forbes v. Twp. of Lower Merion*, 313 F.3d 144, 149 (3d Cir. 2002) (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 434 (1968), for the proposition that reviewing courts require a basis for evaluating "'well-reasoned conclusions arrived at after a comprehensive consideration of all relevant factors'").

Of concern to us, given the parties' arguments on appeal, is that in revising its opinion, the District Court excised its reference to § 6.2.3 of the Trust Agreement, retaining only its reference to § 6.2.1 (defining GLP). Section 6.2.3, however, expressly

---

[7] Our case law generally addresses *denials* of a motion for reconsideration, which are subject to review for abuse of discretion, *see, e.g.*, *Dupree*, 617 F.3d at 733, but there is no reason not to apply the same standard to review of a *grant* of such motion, *see, e.g.*,

10

limits the definition set forth by § 6.2.1, and the issue in this case concerns how to define GLP. The upshot of this, then, is that granting Appellees' motion for reconsideration effectively endorsed their *preference* for how GLP will be defined for purposes of evaluating this case's claims on the merits moving forward. This goes beyond the more restricted legal question, relevant at this stage of the litigation, of whether the disputed term is ambiguous.[8] The result is that GLP is now, as a matter of law, defined in the CBA more broadly than in the Trust Agreement – evidently to Appellees' liking – while Appellants' proffered extrinsic evidence, which arguably cuts the other way, was "barred" (to use the District Court's phrase) from consideration. This reinforces our conclusion that summary judgment was premature.

### III. Conclusion

For the foregoing reasons, and having duly considered the parties' remaining arguments, we will vacate the District Court's grant of summary judgment in favor of Appellees, and remand for further proceedings consistent with this opinion.

---

*Flynn v. Dick Corp.*, 481 F.3d 824, 829 (D.C. Cir. 2007) (district court rulings on motions for reconsideration are subject to review for abuse of discretion).

[8] It is telling that Appellees framed their motion for reconsideration in terms of wanting to avoid being "saddled" with a Trust Agreement-premised definition of GLP that excludes certain benefits. Aside from this argument presenting a classic "wanting to have your cake and eat it too" scenario, it implicates fact-intensive line-drawing properly entrusted to the expertise of the District Court.