**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1592
_____

UNITED STATES OF AMERICA

v.

CHARLES J. WEISS,
                    Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:19-cv-00502)
District Judge:  Honorable Joel H. Slomsky
_____

Argued:  May 3, 2022

Before:  GREENAWAY, JR., PORTER, and PHIPPS, *Circuit
Judges*.

(Filed: November 2, 2022)
_____

Michael J. Haungs
John Schumann            [ARGUED]
UNITED STATES DEPARTMENT OF JUSTICE
TAX DIVISION
950 Pennsylvania Avenue, N.W.
P.O. Box 502
Washington, DC 20044

*Counsel for United States of America*

James R. Malone, Jr.      [ARGUED]
POST & SCHELL
1600 John F. Kennedy Boulevard
Four Penn Center, 14th Floor
Philadelphia, PA 19103

*Counsel for Charles J. Weiss*

_____


OPINION OF THE COURT

_____


PHIPPS, *Circuit Judge*.

After assessing delinquent taxes, the United States has ten years to collect them, *see* 26 U.S.C. § 6502(a)(1), and this case comes down to a matter of days within that decade. Importantly, that limitations period does not necessarily run continuously; it may be tolled for several increments of time, including for the period during which a specific administrative hearing before the Internal Revenue Service "and appeals therein" are pending. *Id.* § 6330(e)(1). Here, the taxpayer requested an administrative hearing, and that began tolling the limitations period. After a series of unfavorable rulings – at

2

the hearing, in the Tax Court, and before the D.C. Circuit – the taxpayer filed a petition for a writ of certiorari, which the Supreme Court denied.  But the United States waited until after the denial of that petition to commence this action.  By that time, even with tolling, much, if not all, of the limitations period had elapsed.  Yet in interpreting the statute, petitions for writs of certiorari are 'appeals therein,' and also an appeal remains 'pending' until the time to file such a petition expires.  Due to that additional tolling of the statute of limitations for those increments, this collection action is timely.  *Id*.

## I. FACTUAL BACKGROUND
## (UNDISPUTED BY THE PARTIES)

For the six-year period from 1986 through 1991, Charles Weiss did not pay federal income taxes.  In October 1994, Weiss late-filed his tax returns for those years, self-reporting a liability of $299,202.  Later that month, the Internal Revenue Service made tax assessments against him for each of those years.

By assessing those taxes, the IRS triggered a ten-year limitations period for collecting the unpaid taxes through a court proceeding or a levy, which is a legal seizure of property or a right to property.  *See* 26 U.S.C. §§ 6331(b),  6502(a)(1).  Weiss's subsequent bankruptcies tolled that limitations period three times between 1994 and 2009, yielding a new expiration date for the statute of limitations: July 21, 2009.

In anticipation of that deadline, the IRS began the process of collecting the unpaid taxes through a levy.  It mailed a *Final Notice – Notice of Intent to Levy and Notice of Your Right to a Hearing* letter to Weiss on or about February 13, 2009.  That notice, also referred to as a Letter 1058A, informed Weiss that the IRS intended to levy his unpaid taxes for the years 1986 to 1991, and that he had an opportunity to request a Collection Due Process hearing.  A Collection Due Process hearing is an administrative proceeding before an appeals officer with the

3

IRS Independent Office of Appeals in which a taxpayer may raise "any relevant issue relating to the unpaid tax or the proposed levy." *Id.* § 6330(c)(2)(A); *see id.* § 6330(b); *cf. id.* § 6330(c)(4) (precluding certain previously resolved issues from being raised at a Collection Due Process hearing). The notice, although expressing an intent to levy Weiss's property, was not sufficient to make a levy – that requires a notice of seizure – and thus, the statute of limitations continued to run. *See id.* § 6502(b) (stating that a levy is considered made on the date that notice of seizure is given); *see also id.* § 6335(a) (providing for notice of seizure).

In response to that notice, Weiss timely requested a Collection Due Process hearing through a Form 12153. *See id.* § 6330(a)(3)(B); *see also Weiss v. Comm'r*, 2018 WL 2759389, at *2–3 (D.C. Cir. May 22, 2018) (per curiam) (concluding that Weiss's request was timely), *cert. denied*, 139 S. Ct. 612 (2018). That request suspended the statute of limitations for the period during which the hearing "and appeals therein" were "pending." 26 U.S.C. § 6330(e)(1). On the date that Weiss requested the hearing, no less than 129 days remained in the limitations period.

Weiss did not prevail at the hearing or in any of his review-as-of-right challenges in federal court. The IRS Independent Office of Appeals ruled against him at the Collection Due Process hearing. Weiss sought review of that determination by timely filing a petition with the United States Tax Court. *See id.* § 6330(d)(1). Over five years later, the Tax Court affirmed that determination. *See Weiss v. Comm'r*, 147 T.C. 179, 181 (2016). Weiss then timely appealed the Tax Court's ruling to the United States Court of Appeals for the District of Columbia Circuit, but he fared no better there. *See* 26 U.S.C. § 7483. The D.C. Circuit affirmed the Tax Court's judgment, and Weiss petitioned for panel rehearing and rehearing *en banc*. *See Weiss v. Comm'r*, 2018 WL 2759389 (D.C. Cir. May 22, 2018). After denying those petitions, the D.C. Circuit issued a mandate on August 23, 2018.

4

As a last resort, Weiss timely filed a petition for a writ of certiorari with the Supreme Court of the United States on October 24, 2018. *See* 28 U.S.C. § 1254(1) (allowing for review of court of appeals decisions by writ of certiorari). Through an order on December 3, 2018, the Supreme Court denied that petition. *See Weiss v. Comm'r*, 139 S. Ct. 612 (2018).

At that point, instead of proceeding to levy Weiss's property, the government initiated a collection action in the District Court. *See* 28 U.S.C. §§ 1340, 1345; *see also* 26 U.S.C. § 7402(a). Through a complaint filed on February 5, 2019, the government sought to collect from Weiss his delinquent taxes plus accrued interest, which together totaled $773,899.84.

## II. PROCEDURAL HISTORY

The issue before the District Court was the timeliness of this action. The parties stipulated to the material facts and cross-moved for summary judgment. They disagreed as to the meaning of two terms in the tolling provision of § 6330(e)(1): whether the phrase 'appeals therein' includes petitions for writs of certiorari and whether a denial of a petition for a writ of certiorari constitutes a 'final determination' in a Collection Due Process hearing.

The District Court resolved both of those issues in favor of the government. It concluded that a petition for a writ of certiorari falls within the 'appeals therein' clause. It also held that the Supreme Court's denial of such a petition constitutes a 'final determination' in a Collection Due Process hearing. On those grounds, the District Court entered summary judgment for the government.

Through a timely appeal, Weiss invokes this Court's appellate jurisdiction and challenges both bases for the District

Court's finding of timeliness. *See* 28 U.S.C. § 1291; Fed. R. App. P. 4(a).

### III. DISCUSSION

This case lends itself well to *de novo* review of the summary-judgment record. *See* Fed. R. Civ. P. 56(a); *see Cranbury Brick Yard, LLC v. United States*, 943 F.3d 701, 708 (3d Cir. 2019). The material facts are undisputed. After the D.C. Circuit issued the mandate, no less than 129 days remained of the ten-year statute of limitations. Weiss filed a petition for a writ of certiorari 62 days later, and 40 days after that, the Supreme Court denied his petition. The date on which government commenced this action was 64 days after the Supreme Court's denial of Weiss's petition for a writ certiorari and 166 days after the D.C. Circuit's mandate.

Using those dates, the timeliness of this case turns on questions of law. If the statute of limitations, which had no less than 129 days remaining, is tolled for either the time between the D.C. Circuit's mandate and Weiss's petition (62 days) or the time from Weiss's filing of that petition to its denial (40 days), then the government's filing of this case 166 days after the D.C. Circuit's mandate would be timely. But if both of those increments associated with Weiss's petition fail to suspend the statute of limitations, then the government's filing would be too late. As elaborated below, the time associated with Weiss's petition (a combined total of 102 days) tolls the statute of limitations, and that renders this action timely – without the need to address the applicability of the 'final determination' provision relied upon by the District Court.

Under the statute of limitations, once a tax is assessed, the government has ten years to collect it "by levy or by a proceeding in court." 26 U.S.C. § 6502(a)(1). But § 6330(e)(1) operates as a tolling statute by suspending the

6

statute of limitations for the period during which Collection Due Process hearings and appeals therein are pending:

> Except as provided in paragraph (2), if a hearing is requested under subsection (a)(3)(B), the levy actions which are the subject of the requested hearing and the running of any period of limitations under section 6502 (relating to collection after assessment), section 6531 (relating to criminal prosecutions), or section 6532 (relating to other suits) shall be suspended for *the period during which such hearing, and appeals therein, are pending*.

*Id.* § 6330(e)(1) (emphasis added).

In allowing tolling for that period, Congress did not define two relevant terms – 'appeals therein' and 'pending.' Without a controlling statutory definition, those terms take on their "ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979); *see also Wis. Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2070 (2018) (quoting *Perrin*, 444 U.S. at 42); *Crane v. Comm'r*, 331 U.S. 1, 6 (1947) ("[T]he words of statutes – including revenue acts – should be interpreted where possible in their ordinary, everyday senses."); *United States v. Jabateh*, 974 F.3d 281, 296 (3d Cir. 2020) ("[U]nder the fixed-meaning canon '[w]ords must be given the meaning they had when the text was adopted.'" (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 78 (2012)) (alteration in original)). Yet, from sources near in time to the statute's enactment, including contemporaneous dictionaries,[1] both

---

[1] *See generally Wis. Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2070–71 (2018) (using contemporaneous dictionaries to ascertain the meaning of an undefined statutory term); *see also Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 227 (2014) (same); *Delaware Cnty. v. Fed. Hous. Fin. Agency*, 747 F.3d 215, 221

terms are capable of multiple meanings, and this case depends on which of those meanings apply to the tolling provision.

### A. As Used in the Tolling Statute, the Phrase 'Appeals Therein' Includes a Petition for a Writ of Certiorari.

To interpret the phase 'appeals therein' requires an analysis of its two component words, each of which is capable of multiple meanings.

The first of those, 'appeal,' had two common meanings when § 6330 was enacted in 1998. Contemporary dictionaries reveal that it could be used, in a general sense, to mean a "[r]esort to a superior (*i.e.* appellate) court to review the decision of an inferior (*i.e.* trial) court." *Appeal*, *Black's Law Dictionary* (6th ed. 1990). Under that general meaning, the term 'appeal' would include both appeals and petitions – those filed in court and those filed administratively. *See id.* But as evidenced by a number of federal statutes and court rules, the term 'appeal' could also refer to a narrower class within that larger class: it could mean a method of seeking review of an order that is distinct from other such methods, such as a petition. As used more narrowly, appeals are typically initiated in the court that issued the order,[2] while petitions are often

---

(3d Cir. 2014) ("When words are left undefined, we have turned to 'standard reference works such as legal and general dictionaries in order to ascertain their ordinary meaning.'" (quoting *Eid v. Thompson*, 740 F.3d 118, 123 (3d Cir. 2014))).

[2] *See, e.g.*, Sup. Ct. R. 18(1) (1997) (stating that appeals from three-judge district court panels are commenced by filing a notice of appeal with the district court clerk); Fed. R. App. P. 3(a) (1994) (stating that appeals as of right from district courts are taken by filing a notice of appeal with the district court clerk); Fed. R. App. P. 13(a) (1994) (stating that appeals as of right from the Tax Court are taken by filing a notice of appeal with the Tax Court clerk); Tax Ct. R. 190(a) (1994) (same;

commenced through a filing with the reviewing body.[3]  *Cf. Garland v. Ming Dai*, 141 S. Ct. 1669, 1677–78 (2021)

Bankr. R. 8003(a)(1) (1994) (stating that bankruptcy appeals as of right are taken by filing a notice of appeal with the bankruptcy clerk); 15 U.S.C. § 1071(a)(1)–(2) (1994) (stating that appeals from the Trademark Trial and Appeal Board are taken by filing a notice of appeal in the U.S. Patent and Trademark Office); 18 U.S.C. § 3742 (1994) (stating that appeals of sentences imposed by district courts are taken by filing a notice of appeal in the district court); 26 U.S.C. § 7483 (1994) (stating that review of Tax Court decision is taken by filing a notice of appeal with the Tax Court clerk); 28 U.S.C. § 2522 (1994) (stating that review of decisions of the Court of Federal Claims is taken by filing a notice of appeal with the clerk of that court); 28 U.S.C. § 2645(c) (1994) (stating that review of decisions of the Court of International Trade is taken by filing a notice of appeal with the clerk of that court); 35 U.S.C. § 142 (1994) (stating that patent appeals from Patent and Trademark Office decisions are taken by filing a notice of appeal with that office); 38 U.S.C. § 7292(a) (1994) (stating that review of decisions of the U.S. Court of Appeals for Veterans Claims is taken by filing a notice of appeal with that court).

[3] *See, e.g.*, Sup. Ct. R. 12 (1997) (stating that review on certiorari is sought by filing a petition with the Supreme Court clerk); Fed. R. App. P. 5(a) (1994) (stating that permissive appeals to the courts of appeals are sought by filing a petition with the circuit clerk); Fed. R. App. P. 15(a) (1994) (stating that review of agency orders is commenced by filing a petition with the circuit clerk); Tax Ct. R. 20 (1994) (stating that a case in the Tax Court is commenced by filing a petition with that court); 3 U.S.C. § 425(c)(5) (1997) (stating that persons aggrieved by decisions of the Occupational Safety and Health Review Commission or the Secretary of Labor may seek review by filing a petition with the U.S. Court of Appeals for the Federal Circuit); 5 U.S.C. § 7703(b)(1) (1994) (stating that decisions of the Merit Systems Protection Board are reviewed

(explaining that appeals typically provide for direct review while petitions typically allow for collateral review). Also, under that narrower meaning, appeals tend to be provided as of right, while petitions more frequently depend on the discretion of the reviewing body. *Compare* Sup. Ct. R. 10 (1997) (explaining that "[r]eview on a writ of certiorari is not a matter of right, but of judicial discretion" that "will be granted only for compelling reasons"), *and* 28 U.S.C. § 1254(1) (1994), *with* Sup. Ct. R. 18 (1997) (explaining that a party invokes the Supreme Court's appellate jurisdiction "by filing a notice of appeal"), *and* 28 U.S.C. § 1253 (1994).[4]

by filing a petition in the U.S. Court of Appeals for the Federal Circuit); 7 U.S.C. § 21(i)(4) (1994) (stating that decisions of the Commodity Futures Trading Commission are reviewed by filing a petition in a court of appeals); 8 U.S.C. § 1105(a)(2) (1994) (stating that review of orders of removal by the Board of Immigration Appeals is taken by filing a petition in a court of appeals); 28 U.S.C. § 2344 (1994) (permitting review of agency orders by filing a petition in a court of appeals); 29 U.S.C. § 660(a) (1994) (permitting review of orders of the Occupational Safety and Health Review Commission by filing a petition in a court of appeals); 42 U.S.C. § 4915(a) (1994) (permitting review of actions of the Administrator of the Environmental Protection Agency by filing a petition in the U.S. Court of Appeals for the D.C. Circuit); *cf.* Fed. R. App. P. 35(b) (1994) (providing for petitions for rehearing *en banc* to be filed with the court of appeals); Fed. R. App. P. 40(a) (1994) (providing for petitions for panel rehearing to be filed with the court of appeals).

[4] Because the general meaning of 'appeal' fully encompasses its narrower meaning, that word is known as an autohyponym. *See* Laurence R. Horn, *Ambiguity, Negation, and the London School of Parsimony*, 14 N.E. Linguistics Soc'y 108, 110–18 (1984) (discussing a number of common autohyponyms). A common autohyponym is the word 'finger,' which can refer generally to all the digits on one's hand, but it can also refer to only the non-thumb digits. *See* Anu Koskela, *Inclusion*

At the time of the tolling statute's enactment, the word 'therein' also had two ordinary, common meanings. It could mean "[i]n that place." *Therein*, *Black's Law Dictionary* (6th ed. 1990); *see also Webster's New International Dictionary* ('*Webster's Third*') 2372 (3d ed. 1993). In context, under that meaning, the phrase 'appeals therein' would refer to appeals pending in the same place as the Collection Due Process hearing, which would be within the IRS, not in a federal court. But under the other definition, 'therein' could mean "in such matter." *Webster's Third* 2372 (defining 'therein' as "in that particular[;] in that respect[;] in such matter"). Under that meaning, the phrase 'appeals therein' in context would refer to appeals of a Collection Due Process hearing determination.

Because the terms 'appeals' and 'therein' each had two meanings, there are four possible combinations for the meaning of the phrase 'appeals therein.' But three of those combinations would render the expression 'appeals therein' meaningless because they reference processes that do not exist, such as administrative appeals of Collection Due Process hearings within the IRS. By contrast, the fourth combination – 'appeals' in the general sense and 'therein' as 'in such matter' – produces a reasonable outcome that is consistent with multiple canons of construction.

_____

*Contrast and Polysemy in Dictionaries: The Relationship Between Theory, Language Use & Lexiographic Practice*, 12:4 Rsch. in Language 319, 320–22 (2014). A common legal term that is an autohyponym is '*res judicata*': it has a general meaning that encompasses both claim preclusion and issue preclusion, but it also has a narrower meaning that refers only to claim preclusion. *See United States v. 5 Unlabeled Boxes*, 572 F.3d 169, 173–74 (3d Cir. 2009); *see also Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc.*, 575 F.2d 530, 535–36 (5th Cir. 1978); 18 C. Wright, A. Miller, & E. Cooper, *Federal Practice & Procedure* § 4402 (3d ed. Apr. 2022 update).

11

Three combinations of the terms 'appeals' and 'therein' yield meanings that nullify the phrase's effect in contravention of the canon against superfluity, which holds that every word in a statute should be given effect. *See generally Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 138 S. Ct. 617, 632 (2018) ("[T]he Court is 'obliged to give effect, if possible, to every word Congress used.'" (quoting *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979))). First, if the term 'appeals' is read narrowly (to exclude petitions for review) and the term 'therein' is used locationally (to mean only administrative appeals within the IRS), then the phrase describes nothing. The IRS does not provide for an administrative appeal process, *see* 26 U.S.C. § 6330(b)–(d); *see also* 26 C.F.R. § 301.6330-1(b)(2), so if 'appeals therein' referred to only administrative appeals within the IRS, it would be superfluous. Second, for essentially the same reasons, the broad meaning of the term 'appeals' coupled with the locational definition of 'therein' would also render the combined expression useless: the IRS does not permit administrative appeals or administrative petitions, *see* 26 U.S.C. § 6330(b)–(d); *see also* 26 C.F.R. § 301.6330-1(b)(2), so again the phrase would have no effect. Third, if 'appeals' is read narrowly, and 'therein' is read as 'in such matter,' then that too would produce a meaningless result. Seeking review of a Collection Due Process hearing requires filing a petition in the Tax Court, not an appeal, *see* 26 U.S.C. § 6330(d)(1); *see also* 26 C.F.R. § 6330-1(b)(2), (f)(1), and if the phrase 'appeals therein' excludes petitions, then it does no work.

The fourth combination, however, does not offend the canon against superfluity. If the term 'appeals' receives its broader meaning (to include petitions) and the word 'therein' means 'in such matter,' then the phrase 'appeals therein' refers to any appeals or petitions from a Collection Due Process hearing. That understanding accounts for the entire judicial review process: the Tax Court reviews petitions from the Collection Due Process hearing, *see* 26 U.S.C. § 6330(d)(1);

12

*see also* 26 C.F.R. § 301.6330-1(b)(2), (f)(1); the appellate courts review appeals from the Tax Court as well as petitions for panel rehearing and *en banc* rehearing, *see* 26 U.S.C. § 7482(a)(1); Fed. R. App. P. 35, 40; and petitions for certiorari from the appellate courts may be filed with the Supreme Court, *see* 28 U.S.C. § 1254(1).

Also, with respect to the meaning of the term 'appeal,' the fourth combination comports with the general-terms canon, which holds that general terms should be interpreted generally. *See Arizona v. Tohono O'odham Nation*, 818 F.3d 549, 557 & n.4 (9th Cir. 2016) ("General words are to be understood in a general sense."); *see also Gov't Emps. Ret. Sys. of V.I. v. Gov't of V.I.*, 995 F.3d 66, 107 (3d Cir. 2021) (Matey, J., concurring in part) ("[G]eneral terms 'are to be accorded their full and fair scope' and 'are not to be arbitrarily limited.'" (quoting Scalia & Garner, *supra*, at 101)); 3A J.G. Sutherland, *Statutes and Statutory Construction* § 66:6 (8th ed. 2018) ("Courts construing tax collection statutes employ the usual maxims of construction."). And here, the tolling statute contains no suggestion that the term 'appeals' should be given its narrow meaning. *See* 26 U.S.C. § 6330. Although in other sections of the tax code, Congress distinguished between notices of appeal and petitions for certiorari, *see, e.g.*, *id.* § 7481(a), it did not do so here. Thus, under the general-terms canon, the term 'appeals' as used in § 6330 should receive its general meaning.

Altogether, these considerations remove any uncertainty as to the meaning of the phrase 'appeals therein': it applies to any appeals and petitions seeking review of a Collection Due Process hearing, including a petition for a writ of certiorari.

**B. Under the Tolling Statute, a Collection Due Process Hearing or Appeal Therein Is 'Pending' from Its Commencement Until the Date When It Can No Longer Be Challenged.**

Even with clarity on the meaning of 'appeals therein,' the calculation of the tolling period depends on the term 'pending.' Section 6330(e)(1) suspends the statute of limitations "for the period during which such hearing, and appeals therein, are pending." 26 U.S.C. § 6330(e)(1). In this context, the term 'pending' functions as a predicate adjective, modifying 'such hearing, and appeals therein.' And when Congress enacted § 6330(e)(1), the term 'pending' had two common ordinary meanings as an adjective.

Under one definition, 'pending' could mean "[b]egun, but not yet completed." *Pending, Black's Law Dictionary* (6th ed. 1990); *see also Webster's Third* 1669 (defining "pending" as "not yet decided," "in continuance," and "in suspense"). With that meaning for 'pending,' the hearing and the 'appeals therein' would be pending until the agency resolved the hearing or a court decided the appeal, but after resolution, neither the hearing nor an 'appeal therein' would remain pending. In the context of § 6330(e)(1), that would result in intermittent tolling such that the statute of limitations would be suspended for potentially several distinct periods. Tolling would occur while the hearing was active, but it would cease for the interval between resolution of the initial hearing and the filing of an appeal. Similarly, the statute of limitations would be suspended while the 'appeals therein' were active, but the tolling would stop for the time between resolution of an appeal and the filing of any successive appeal permitted by law.

Alternatively, the term 'pending' had the common ordinary meaning of "[a]waiting an occurrence of conclusion of an action," such that it described "a period of continuance or indeterminacy." *Pending, Black's Law Dictionary* (6th ed. 1990); *see also Webster's Third* 1669 (defining 'pending' as

"impending" or "imminent"). Under that meaning, a hearing or an appeal therein would be pending after its resolution for the period while the ruling remained indeterminate due to the possibility of an impending or imminent appeal. Under this definition, the tolling under § 6330(e)(1) would be continuous – from the date of the commencement of the hearing through to the date on which the possibility of future appellate review expired.

For purposes of § 6330(e)(1), only the second definition works. The tolling clause identifies a singular 'period' of suspension. The first definition of 'pending,' however, would involve several distinct periods of piecemeal tolling. The statute of limitations would be suspended for the hearing and every appeal, but not for the interim periods between resolution and appeal. If Congress had intended to account for such intermittent tolling, it could have used the word 'periods.' But by instead using the singular term, 'period,' the statute allows only the second meaning of 'pending,' such that it describes a continuous period inclusive of not only the hearing and 'appeals therein' but also any intervening periods of indeterminacy during which an appeal or petition could be filed.

Applying the second definition here, the statute of limitations remained tolled for the 62 days between the D.C. Circuit's mandate and Weiss's petition for a writ of certiorari.

### C. This Action Is Timely Because the Statute of Limitations Tolled for the Time Associated with Weiss's Petition for a Writ of Certiorari.

With that understanding, this action is timely. At least 129 days remained on the statute of limitations when the D.C. Circuit issued its mandate. Due to the meanings of the terms 'appeals therein' and 'pending,' that period is not reduced either by the time that Weiss took to file his petition for a writ of certiorari (62 days) or by the time that the Supreme Court

took to deny the petition (40 days).  Thus, the government had 129 days after the Supreme Court's denial of Weiss's petition to commence this action, and it did so within 64 days – leaving at least 65 days of the ten-year statute of limitations to spare.

## IV. CONCLUSION

For the foregoing reasons, the District Court's judgment will be affirmed.