**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1697
_____

CHRISTOPHER THIEME,
Appellant

v.

WARDEN FORT DIX FCI
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 1:20-cv-14835)
District Judge:  Honorable Christine P. O'Hearn
_____

Argued on July 9, 2025

Before:  KRAUSE, MATEY, and PHIPPS, *Circuit Judges*

(Filed: October 8, 2025)
_____

Tadhg Dooley
David R. Roth
WIGGIN & DANA
One Century Tower
265 Church Street
New Haven, CT 06510

Riley Gordon
Sharon Nunn
Kevin Yang          **[ARGUED]**
YALE LAW SCHOOL
127 Wall Street
New Haven, CT 06511

*Court Appointed Amicus Curiae Counsel*


Paul T. Crane          **[ARGUED]**
UNITED STATES DEPARTMENT OF JUSTICE
APPELLATE SECTION
Room 7323
950 Pennsylvania Avenue NW
Washington, DC 20530

John T. Stinson, Jr.
OFFICE OF UNITED STATES ATTORNEY
Camden Federal Building & Courthouse
401 Market Street
Camden, NJ 08101

*Counsel for Appellee*

_____

OPINION OF THE COURT
_____

PHIPPS, *Circuit Judge*.

A federal statute allows good conduct time credit of up to 54 days each year for persons serving federal sentences. In this case, a federal inmate with a seventeen-and-a-half-year sentence asserts that after the First Step Act of 2018 amended the statute, he became eligible for 54 days of good conduct time credit not only for each full year of his sentence but also for the last six months of his sentence. *See* First Step Act of 2018, Pub. L. No. 115-391, tit. I, § 102(b)(1), 132 Stat. 5194, 5210 (codified at 18 U.S.C. § 3624(b)(1)). Instead of allowing the possibility of a full 54 days of good conduct time credit for the last six months, the Federal Bureau of Prisons, commonly referred to as the 'BOP,' has interpreted the statute as amended by the First Step Act to require prorating the good conduct time credit on a daily basis for that time period. Using that method, the BOP calculated that the prisoner would be eligible for 26, not 54, days of credit for the last six months of his sentence. To obtain the additional 28-day credit, the inmate petitioned for a writ of habeas corpus, and the District Court denied that petition. On *de novo* review of that pure question of law, we will affirm the order of the District Court.

## STATUTORY & REGULATORY CONTEXT

Since 1867, federal prisoners have been statutorily eligible for reduced sentences based on their good conduct while incarcerated.[1] The modern system for granting prisoners such

---

[1] *See* U.S. Parole Comm'n, *History of the Federal Parole System* 5 (2003), https://www.justice.gov/sites/default/files/uspc/legacy/2009/10/07/history.pdf

good conduct time credit began with the enactment of the Sentencing Reform Act of 1984.[2]   Under that legislation, federal prisoners were eligible for a good conduct time credit "of fifty-four days at the end of each year of [their] term of imprisonment."   Pub. L.  No. 98-473,  tit. II,  ch. II,  98 Stat. 1987,  2008–09  (codified  as  amended  at  18 U.S.C. § 3624(b)(1)).   That credit was withheld if "the Bureau of Prisons determine[d] that, during that year, [a prisoner] ha[d] not satisfactorily complied with . . . institutional disciplinary regulations," and any such credit would be "prorated" for the "last year or portion of a year of the term of imprisonment." *Id.* at 2009.  The legislation further provided that any proration had to be credited "within the last six weeks of the sentence." *Id.*   An amendment by the Violent Crime Control and Law Enforcement Act of 1994 made good conduct time credit "subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with  such  institutional  disciplinary  regulations."   Pub. L. No. 103-322, tit. II, subtitle D, § 20405, 108 Stat. 1796, 1825–

---

[https://perma.cc/46MK-VFSB]; *see also* Thomas G. Blomberg & Karol Lucken, *American Penology: A History of Control* 75 (2010) (describing how "the concept of release for good behavior" has been around since the 1850s).

[2] Before enactment of the Sentencing Reform Act of 1984, the rate at which a federal prisoner was eligible for good conduct time credit depended on the length of his or her sentence. *See* 18 U.S.C. § 4161 (1982) (repealed 1984); *Fields v. Keohane*, 954 F.2d  945,  947  (3d Cir.  1992)  (explaining  that  the maximum available good conduct time credit varied depending on the length of the sentence). *See generally* Brent E. Newton & Dawinder S. Sidhu, *The History of the Original United States Sentencing Commission, 1985-1987*, 45 Hofstra L. Rev. 1167, 1169, 1169–87 (2017) (describing how the Sentencing Reform Act of 1984 "ushered in . . . profound changes to the federal criminal justice system").

26 (codified as amended at 18 U.S.C. § 3624(b)(1)). It also added the phrase 'up to' before '54 days' but retained the root term 'prisoner's term of imprisonment,' as well as the proration provision. *Id.* at 1826. But even with that amendment and another in 1996,[3] the statute had a critical ambiguity: it was unclear if the root term, 'prisoner's term of imprisonment,' referred to the initially imposed prison term or to the actual prison term served, which may be less than the initial term based on earned good conduct time credit.

The Supreme Court resolved that ambiguity in *Barber v. Thomas*, 560 U.S. 474 (2010). It did so by evaluating "[t]he statute's language and its purpose, taken together[.]" *Id.* at 480. As far as the statutory text, the Supreme Court focused on the provisions stating that good conduct time credit would be awarded "at the end of each year" and that any such award would be subject to the BOP's determination that "during that year" the inmate behaved in an exemplary fashion. *Id.* (emphasis removed) (quoting 18 U.S.C. § 3624(b)(1) (2006)). From there, the Supreme Court reasoned that the statute's purpose was to implement "a system of retrospective award," not "prospective entitlement." *Id.* at 481 (citation omitted). Based on that analysis, the Supreme Court held that good conduct time credit was available only for the term of imprisonment actually served by the prisoner – not for the term of imprisonment imposed by the sentencing judge. *Id.* at 480–83. Thus, 54 days of good conduct time credit could be awarded "for each full year of imprisonment that [a prisoner]

---

[3] *See* Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, tit. VIII, § 809(c), 110 Stat. 1321, 1321–76 (1996) (extending good conduct time credit to prisoners sentenced for crimes of violence and directing the BOP to consider, in making its determination, whether a prisoner is making progress toward earning a high school diploma or its equivalent).

serves and a proportionally adjusted amount of credit for any additional time served that is less than a full year." *Id.* at 480.

The First Step Act of 2018 amended the statutory provisions regarding good conduct time credit in several respects. That legislation removed text to transform the root term 'prisoner's term of imprisonment' into 'prisoner's sentence.' First Step Act of 2018, Pub. L. No. 115-391, tit. I, § 102(b)(1)(A)(i), 132 Stat. 5194, 5210 (codified at 18 U.S.C. § 3624(b)(1)). And the phrase 'at the end of each year' was revised to read 'for each year.' *Id.* With that change to 'for each year,' the First Step Act deleted the term 'prorated' and other language regarding the proration process, such as the phrase 'portion of a year' and the specification that the credit be awarded 'within the last six weeks of the sentence.' *Id.* Altogether, after the First Step Act amendments, which are visualized below, good conduct time credits were not purely a retrospective reward but rather took on some attributes of a prospective entitlement, albeit one subject to BOP review:

> Subject to paragraph (2), a prisoner who is serving a term of imprisonment of more than 1 year other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of the prisoner's sentence, ~~beyond the time served,~~ of up to 54 days ~~at the end of~~ *for* each year of the prisoner's ~~term of imprisonment, beginning at the end of the first year of the term~~ *sentence imposed by the court*, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations . . . . Subject to paragraph (2), credit for the last year ~~or portion of a year~~ of ~~the~~ *a* term of imprisonment shall be ~~prorated and~~ credited ~~within the last six weeks of~~

6

> ~~the sentence~~ *on the first day of the last year of the term of imprisonment*.

18 U.S.C. § 3624(b)(1) (strikethroughs representing deletions and emphases representing additions made by the First Step Act, tit. I, § 102(b)(1)(A)(i), 132 Stat. at 5210).

In response to those amendments, the BOP published a notice of proposed rulemaking on December 31, 2019, with a revised method for calculating good conduct time credit. *Good Conduct Time Credit Under the First Step Act*, 84 Fed. Reg. 72,274, 72,274 (Dec. 31, 2019). *See generally* 5 U.S.C. § 553(b) (setting forth the process for proposing agency rules). Under that new approach, the BOP would calculate credit "for each year of *the sentence imposed by the court*, instead of for each year of *actual time served*." *Good Conduct Time Credit Under the First Step Act*, 84 Fed. Reg. at 72,274. And when the last increment of the sentence is for a portion of a year, the BOP would prorate good conduct time credit at the rate of 0.148 credits per day (0.148 is the maximum 54 days of credit divided by 365 days in a year). *Id.* at 72,276 & n.5. By the comment deadline of March 2, 2020, the BOP received 74 comments, and after considering those, it promulgated a final rule, effective March 14, 2022, formally implementing the proposed methodology. *Good Conduct Time Credit Under the First Step Act*, 87 Fed. Reg. 7,938, 7,938 (Feb. 11, 2022) (codified at 28 C.F.R. pt. 523).

## FACTUAL & PROCEDURAL BACKGROUND

On December 19, 2016, then-thirty-six-year-old Christopher Thieme began serving a 210-month sentence for the use of interstate commerce facilities in the commission of murder-for-hire, *see* 18 U.S.C. § 1958(a), and attempted kidnapping, *see id.* § 1201(a), (d). When Thieme was sentenced, the maximum good conduct time credit available to him was 823 days. But on April 25, 2020, after the enactment of the First Step Act and the publication of the BOP's notice of

7

proposed rulemaking, the BOP recalculated Thieme's potential credits and determined that he would be eligible for 944 days of good conduct time credit. That revised calculation prorated the good conduct time credit for the last six months of Thieme's sentence, and, after rounding down fractions of a day, set the credit at 26 days for that period. *Cf. Good Conduct Time Credit Under the First Step Act*, 87 Fed. Reg. at 7,940 n.3 ("[I]t is the Bureau's convention to round down any partial day of [good conduct time credit] to the nearest whole number.").

Thieme disagreed with the proration of the good conduct time credit for the final six months of his sentence. *Cf. Good Conduct Time Credit Under the First Step Act*, 84 Fed. Reg. at 72,275 (considering but rejecting an interpretation of the First Step Act amendments under which "an inmate [would] earn[] 54 days of credit each year, *and*, on the first day of the last chronological year of the service of his/her sentence, earn[] *another* 54 days"). Without prorating the final six months of his sentence, Thieme would be eligible for 972, not 944, total days of good conduct time credit, resulting in a potential release 28 days earlier than under the BOP's calculation.

To contest that extended confinement period, Thieme, while incarcerated at Federal Correctional Institution Fort Dix, filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241 with the District Court on October 22, 2020. *See Preiser v. Rodriguez*, 411 U.S. 475, 487–88 (1973) (explaining that a challenge to good conduct time credits that would "shorten[] the length of . . . confinement, rather than require[] immediate discharge from that confinement," would be within "the core of habeas corpus in attacking the very duration of . . . physical confinement itself"); *see also* 28 U.S.C. § 2241(c)(3) (allowing persons "in custody in violation of the Constitution or laws or treaties of the United States" to petition for a writ of habeas corpus under § 2241). His challenge was primarily to the BOP's interpretation of the First Step Act amendments that resulted in a proration of the

8

good conduct time credits for the last six months of his sentence. He amplified his argument by asserting that the BOP's interpretation violated his due process rights and the Administrative Procedure Act, codified as amended at 5 U.S.C. §§ 551–559, 701–706. He further asserted that a court applying *Chevron* deference to the BOP's interpretation would offend separation of powers principles.

The District Court denied Thieme's petition. *Thieme v. Ortiz*, 2023 WL 2706757, at \*1 (D.N.J. Mar. 30, 2023). It rejected Thieme's APA claims on the ground that the Sentencing Reform Act of 1984 precludes challenges to agency "determination[s], decision[s], or order[s]" related to the BOP's individualized calculations of a prisoner's potential release date. *Id.* at \*2 (quoting 18 U.S.C. § 3625). And as to Thieme's remaining challenge to the BOP's construction of the statute, the District Court explained that "the plain language of § 3624(b)(1) clearly and unambiguously allows for proration[.]" *Id.* at \*5. As an alternative to its plain-language rationale, the District Court relied on *Chevron* deference to uphold the BOP's interpretation of the revised statute. *Id.*

Through a timely notice of appeal, Thieme invoked this Court's appellate jurisdiction. *See* 28 U.S.C. § 1291. In a thoughtful, well-composed *pro se* brief, he argued that the District Court erred in several respects by upholding the BOP's proration of his good conduct time credit.[4] After the initial

---

[4] Apart from his proration challenges, Thieme also contends that even if the BOP is permitted to prorate, it is not permitted to round down the number of days he can be credited. That, however, is a separate claim, and Thieme raised it for the first time in his reply brief in the District Court. Without Thieme raising the argument in his petition or moving to amend his petition to include that argument, it has not been preserved. *See Woodford v. Garceau*, 538 U.S. 202, 208 (2003) (explaining that a habeas petition functions much like a

briefing closed, this Court entered an order appointing *amicus curiae* counsel to further address those and related issues,[5] and permitting *amicus* and the Government to file supplemental briefs.[6]

complaint in a typical civil case); *Gov't Emps. Ins. Co. v. Mount Prospect Chiropractic Ctr., P.A.*, 98 F.4th 463, 472 (3d Cir. 2024) ("[A] 'complaint may not be amended by the briefs in opposition to a motion to dismiss.'" (quoting *Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988))); *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 641–42 (3d Cir. 1993) (refusing to consider a claim that was not raised in a complaint or through amendment, concluding that "[t]his court will not weaken the district court's control over its own docket by requiring a relaxation of pleading requirements"); *see also* Fed. R. Civ. P. 81(a)(4) (providing that the Federal Rules of Civil Procedure "apply to proceedings for habeas corpus and for quo warranto to the extent that the practice in those proceedings . . . is not specified in a federal statute, the Rules Governing Section 2254 Cases, or the Rules Governing Section 2255 Cases").

[5] The Court expresses gratitude for the *pro bono* services provided by appointed counsel, in particular to Sharon Nunn, Riley Gordon, and Kevin Yang of the Yale Law School Advanced Appellate Litigation Project, for their commendable advocacy.

[6] On March 4, 2025, during the pendency of this appeal, and while he was incarcerated, a federal grand jury in the Northern District of New York indicted Thieme on one count of cyberstalking and three counts of making interstate threats to injure another person. Those charges remain pending, and Thieme has not pleaded guilty or been sentenced for them, so those new charges have not mooted Thieme's habeas petition. *See Chafin v. Chafin*, 568 U.S. 165, 175 (2013) ("[U]ncertainty

## DISCUSSION

Section 2241 allows habeas petitions by persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Here, Thieme argues that he will be held in custody in violation of federal law based on the BOP's reading of the statute, 18 U.S.C. § 3624(b)(1), as amended by the First Step Act. His primary challenge is to the District Court's upholding of the BOP's interpretation of the statute, which prorates good conduct time credits for a partial year. Thieme contests that construction of the statute and contends that the good conduct time credits for the final six months of his sentence should not be subject to proration, such that he would be eligible for good conduct time credit for 28 additional days. As adjuncts to his statutory interpretation argument, Thieme also raises other challenges to the District Court's ruling: he argues that proration of his final six months of good conduct time credits violates his constitutional due process rights, the Administrative Procedure Act, and, if the BOP's interpretation receives *Chevron* deference, then separation of powers principles as well.[7]

---

does not typically render cases moot. Courts often adjudicate disputes where the practical impact of any decision is not assured.").

[7] Thieme argues for the first time on appeal that the major questions doctrine forecloses the BOP's interpretation of the First Step Act amendments, but without Thieme presenting that argument in the District Court, it is not properly considered now. *See Gardner v. Grandolsky*, 585 F.3d 786, 793 (3d Cir. 2009) (declining to consider an argument raised for the first time on appeal that was not raised in a habeas petition). Also, in its initial brief, which with leave of court it has since supplemented, the BOP argued that Thieme was required to administratively exhaust his challenge to the calculation of his sentence. With Thieme validly presenting only statutory

11

### A. Thieme's habeas petition reduces to a challenge to the BOP's interpretation of the First Step Act amendments.

Thieme's adjunct arguments are nonstarters. First, he does not articulate a viable due process claim. The most prominent cases he cites – *Wolff v. McDonnell*, 418 U.S. 539 (1974); *Young v. Kann*, 926 F.2d 1396 (3d Cir. 1991); and *Queen v. Miner*, 530 F.3d 253 (3d Cir. 2008) – are procedural due process challenges to BOP adjudications that denied good conduct time credits to individual prisoners based on their own conduct.[8] *See Wolff*, 418 U.S. at 543; *Young*, 926 F.2d at 1397; *Queen*, 530 F.3d at 254 n.2. Yet Thieme's due process challenge targets the BOP's rulemaking – not an alleged lack of adjudicative procedure. Unlike adjudication, rulemaking does not implicate procedural due process. *See Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 542 n.16 (1978) (explaining that a "rulemaking

---

construction challenges, which are pure questions of law, the BOP no longer makes that argument. *Cf. Vasquez v. Strada*, 684 F.3d 431, 433–34 (3d Cir. 2012) (holding that "a prisoner" who files a habeas petition under 28 U.S.C. § 2241 "need not exhaust administrative remedies where the issue presented involves only statutory construction" (citing *Bradshaw v. Carlson*, 682 F.2d 1050, 1052 (3d Cir. 1981))).

[8] The other cases that Thieme cites also have little bearing on his specific challenge. For instance, *Torres v. Fauver*, 292 F.3d 141 (3d Cir. 2002), was not a case involving a habeas petition; it presented a due process claim brought under 42 U.S.C. § 1983 based on a prison sanction, but the sanction "did not revoke any good-time credits or otherwise affect the fact or length of [the prisoner's] confinement." *Id.* at 142–43. Likewise, *Whalen v. United States*, 445 U.S. 684 (1980), did not involve a habeas petition or good conduct time credits; it did not even present a due process claim but rather concerned a successful double jeopardy challenge. *Id.* at 690.

12

proceeding in its purest form" does not constitutionally require "additional procedural devices"); *compare Londoner v. City & County of Denver*, 210 U.S. 373, 385–86 (1908) (evaluating a due process challenge to an adjudicatory proceeding), *with Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445–46 (1915) (evaluating a due process challenge to rulemaking). Accordingly, without challenging adjudicative shortcomings, Thieme does not have a viable procedural due process claim.

Thieme gets further with his APA claims, but they are still not successful. The text of the APA allows challenges to agency action to be brought in habeas petitions. 5 U.S.C. § 703; *see also Gardner v. Grandolsky*, 585 F.3d 786, 788, 790–93 (3d Cir. 2009) (deciding an APA claim against a BOP regulation within a habeas petition). But the writ of habeas corpus is a means of challenging "unlawful executive detention" for which the "typical remedy . . . is . . . release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). Thus, for an APA claim to be brought in habeas, it must have some relationship to the prisoner's release. Thieme satisfies that nexus requirement because his APA claims challenge the proration and the loss of a potential 28 days of good conduct time credits.

As to the merits of his APA claims, the APA allows challenges to "final agency action," 5 U.S.C. § 704, with the APA defining the sub-term 'agency action' to include agency rules and orders, *id.* § 701(b)(2); *id.* § 551(13) (defining 'agency action' to "include[] the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act"). That finality principle prevents Thieme from challenging the BOP's rule, codified in regulation at 28 C.F.R. pt. 523, of its interpretation of the First Step Act amendments. When Thieme filed his habeas petition on October 22, 2020, the BOP had previously, on December 31, 2019, proposed its new rule, and the comment period had closed on March 2, 2020. *See Good Conduct Time*

13

*Credit Under the First Step Act*, 84 Fed. Reg. at 72,274 (directing comments to be submitted by March 2, 2020). But the BOP had not yet issued a final rule. *See Good Conduct Time Credit Under the First Step Act*, 87 Fed. Reg. at 7,938 (Feb. 11, 2022). And thus, Thieme's APA challenge to the regulation was premature and validly rejected. *See Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 808 (2024) (explaining that "§ 704's finality requirement . . . is a 'necessary, but not by itself . . . sufficient, ground for stating a claim under the APA'" (quoting *Herr v. U.S. Forest Serv.*, 803 F.3d 809, 819 (6th Cir. 2015)) (ellipses in original)); *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (explaining the conditions for agency action to be considered 'final' and therefore reviewable under the APA). The finality principle, however, does not prevent Thieme from challenging the BOP's recalculation of his earliest possible release date. Such a determination qualifies as an agency order,[9] and the BOP made that determination using its new methodology on April 25, 2020, before Thieme filed suit.

---

[9] *See* 5 U.S.C. § 551(6) (defining 'order' to "mean[] the whole or a part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter other than rule making but including licensing"); *Chi. & S. Air Lines v. Waterman S.S. Corp.*, 333 U.S. 103, 112–13 (1948) ("[A]dministrative orders are not reviewable unless and until they impose an obligation, deny a right or fix some legal relationship as a consummation of the administrative process."); *Robert W. Mauthe MD PC v. Millennium Health LLC*, 58 F.4th 93, 101 (3d Cir. 2023) (Phipps, J., concurring) ("[A]n order . . . is an agency 'disposition' of a 'matter[]' arrived at through 'adjudication[]' that is the concrete application of legal principles to a specific party based on its particular circumstances." (citations omitted) (first quoting 5 U.S.C. § 551(6); and then quoting *id.* § 551(7))).

14

Although the APA itself does not present a barrier to Thieme's proceeding with an APA challenge to the BOP's determination of his release date, the Sentencing Reform Act of 1984 does. Part of that legislation expressly exempted several provisions of the APA from applying to a subchapter within Title 18 of the United States Code:

> The provisions of sections 554 and 555 and 701 through 706 of title 5, United States Code, do not apply to the making of any determination, decision, or order under this subchapter.

Pub. L. No. 98-473, tit. II, § 212(a)(2), 98 Stat. 2010 (1984) (codified at 18 U.S.C. § 3625). One of the exempted APA sections, 5 U.S.C. § 706, is the basis for Thieme's APA claim. And the referenced 'subchapter' includes the challenged statutory provision, 18 U.S.C. § 3624(b)(1), which governs the calculation of good conduct time credit. *See Reeb v. Thomas*, 636 F.3d 1224, 1227 (9th Cir. 2011) ("The plain language of [18 U.S.C. § 3625] specifies that the judicial review provisions of the APA, 5 U.S.C. §§ 701–706, do not apply to 'any determination, decision, or order' made pursuant to 18 U.S.C. §§ 3621–3624."); *Richmond v. Scibana*, 387 F.3d 602, 605 (7th Cir. 2004) (explaining that inmate placement decisions governed by 18 U.S.C. §§ 3621(a) and 3624(c) are "not open to challenge under the APA" in light of § 3625). Consequently, Thieme cannot bring an APA challenge to the BOP's calculation of his specific release date. *See Murray v. Bledsoe*, 650 F.3d 246, 247 n.1 (3d Cir. 2011) (per curiam) (explaining "that the APA's provisions for judicial review of administrative agency decisions . . . do not apply to decisions made under 18 U.S.C. §§ 3621–26" (citing 18 U.S.C. § 3625)); *see also Standifer v. Ledezma*, 653 F.3d 1276, 1279 n.3 (10th Cir. 2011) (recognizing that § 3625 "prohibits judicial review under the APA").

Thieme's additional constitutional argument – a separation-of-powers challenge to *Chevron* deference – is directed at the District Court's reliance on *Chevron* as an alternative ground for its ruling.  But after the District Court issued that decision, the Supreme Court abrogated *Chevron* deference, *see Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024) (overruling *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984)), and without *Chevron* deference, the District Court's ruling depends wholly on the meaning of the First Step Act amendments.

## B. The First Step Act amendments compel the proration of good conduct time credit.

As far as Thieme's challenge to the BOP's interpretation of § 3624(b)(1), the strongest argument against the proration of good conduct time credit is that the First Step Act deleted the term 'prorated' from the statute.  The significance of a deletion of statutory text is informed by the rule against superfluity.  *See Hayes v. Harvey*, 903 F.3d 32, 42 (3d Cir. 2018) (recognizing that the presumption that Congress "intends [its amendments] to have real and substantial effect" is a corollary of the canon against superfluity (quoting *Ross v. Blake*, 578 U.S. 632, 641–42 (2016))).  Under that canon, "every word in a statute should be given effect."  *United States v. Weiss*, 52 F.4th 546, 552 (3d Cir. 2022) (citing *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 583 U.S. 109, 128–29 (2018)).  Thus, if text is deleted from a statute, the statute will not ordinarily have the same meaning as it had with the text included.  *See Pierce County v. Guillen*, 537 U.S. 129, 145 (2003) (rejecting an interpretation of a statute that "would render [an amendment] . . . an exercise in futility," as a "reading [that] gives [an] amendment no 'real and substantial effect' . . . cannot be the proper understanding of the statute" (quoting *Stone v. INS*, 514 U.S. 386, 397 (1995))).  But the First Step Act's revisions were not entirely deletions; they also substituted the phrase 'for each year' in place of 'at the end of each year.'  First Step Act of 2018, Pub. L. No. 115-391, tit. I, § 102(b)(1), 132 Stat. 5194, 5210 (codified at

16

18 U.S.C. § 3624(b)(1)). And the words 'for each,' which are not statutorily defined or recognized terms of art,[10] have a common and ordinary meaning synonymous with the word 'per.' *See Per*, *Merriam-Webster's Collegiate Dictionary* 918 (11th ed. 2003) (defining 'per' to mean "with respect to every member of a specified group: for each"); *Per*, *Oxford English Dictionary* (Aug. 2025) (defining 'per,' "[i]n [its] distributive sense," to mean "[f]or each" or "for every").[11] That word, when "[u]sed after a statement of number or quantity," "express[es] a rate or proportion." *Per*, *Oxford English Dictionary* (Aug. 2025). Thus, although the First Step Act deleted one rate-setting term, 'prorated,' it added another, 'for each,' and that addition was in much closer proximity to '54 days' than 'prorated' previously appeared: "up to *54 days for each year* of the prisoner's sentence imposed by the court." 18 U.S.C. § 3624(b)(1) (emphasis added); *see also United States ex rel. Totten v. Bombardier Corp.*, 380 F.3d 488, 499 (D.C. Cir. 2004) (Roberts, J.) (inferring that, through the introduction of a phrase in one part of a statute, "Congress was reinforcing – rather than abandoning –" a meaning "that might otherwise have been blurred by the addition of" another provision). From that clause, the revised statute is most naturally read as setting a rate for good conduct time credit at 54 days per year. Thus, despite the First Step Act's deletion of

---

[10] Under the common and ordinary meaning canon, a term's meaning is limited to its common and ordinary meaning or meanings unless the term is statutorily defined or a recognized term of art. *See Weiss*, 52 F.4th at 549 (citing *Perrin v. United States*, 444 U.S. 37, 42 (1979)).

[11] https://www.oed.com/dictionary/per_prep?tab=meaning_and_use [https://perma.cc/Q35F-BLLJ]. *See also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 423 (2012) (approving the use of the eleventh edition of *Merriam-Webster's Collegiate Dictionary* and the online edition of *The Oxford English Dictionary*).

17

the term 'prorated,' its other amendments preserve the proration process for the final portion of a year of a prisoner's sentence.

Resisting that conclusion, *amicus* argues that in the phrase 'up to 54 days for each year,' the word 'year' refers to both full years and partial years. It is true that in addition to the ordinary and common meaning of 'year' as full year,[12] the term 'year' can sometimes mean partial year, such as in the phrase 'school year.' But context informs statutory interpretation, *see City & County of San Francisco v. EPA*, 604 U.S. 334, 350 (2025), and the phrase 'up to 54 days for each year,' sets the rate at which good conduct time credits accrue. In the rate-setting context, there is real value in using a constant as the denominator. Moreover, the object of statutory construction is to interpret a statutory provision capable of two distinct meanings so that it has only a single meaning – not to preserve both meanings and apply the one that better fits the context of a particular application of the statute. *See Loper Bright*, 603 U.S. at 400 (explaining that a statutory term "no matter how impenetrable . . . must[] have a *single*, best meaning" (emphasis added)). Yet under *amicus*'s interpretation, the term 'year' would mean 'full year' for the first 17 years of his sentence but then 'partial year' for the last six months of his sentence. That approach does not work in the rate-setting context, and more problematically, by attempting to preserve both potential meanings of a statutory provision, it is not a permissible mode of statutory interpretation.

As a final attack, *amicus* invokes the rule of lenity. That rule applies only to penal statutes, and although the Supreme Court has not determined whether the challenged statute, 18 U.S.C. § 3624(b)(1), is penal, at least one Circuit has

---

[12] *United States v. Brown*, 740 F.3d 145, 149 (3d Cir. 2014) ("In common usage, a year means 365 consecutive days . . . or 12 months.").

concluded that the pre-First Step Act version of the statute was not penal. *Compare Barber*, 560 U.S. at 488 (assuming, "for present purposes" and without deciding, "that § 3624(b) can be construed as imposing a criminal penalty" and therefore reserving the question of whether § 3624(b) can be classified as 'penal' for purposes of triggering the rule of lenity), *with Sash v. Zenk*, 428 F.3d 132, 135 (2d Cir. 2005) (Sotomayor, J.) (concluding that § 3624(b) is non-penal). But even if § 3624(b)(1) qualified as penal, the rule of lenity would not automatically apply; rather, it applies only when there is a "grievous ambiguity." *Barber*, 560 U.S. at 488 ("[T]he rule of lenity only applies if, after considering text, structure, history, and purpose, there remains a 'grievous ambiguity or uncertainty in the statute,' such that the Court must simply 'guess as to what Congress intended.'" (internal citations omitted) (first quoting *Muscarello v. United States*, 524 U.S. 125, 139 (1998); and then quoting *Bifulco v. United States*, 447 U.S. 381, 387 (1980))). And there is no such ambiguity here. As explained above, the natural reading of the statute is that good conduct time credits accrue at the rate of 54 days per year and credit for partial years of confinement are determined on a prorated basis.

## CONCLUSION

For the foregoing reasons, we will affirm the judgment of the District Court.

19